TIMOTHY COURCHAINE
United States Attorney
District of Arizona
JOSEPH F. BOZDECH
California State Bar Number 303453
Assistant United States Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7751
Email: Joseph.Bozdech@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br>          v.<br><br>5,012,294.90 in TetherUS ("USDT"),<br><br>75,589,553.41 in Gala ("GALA"),<br><br>226.81 in BNB ("BNB"),<br><br>1,264.16 in Bitcoin ("BTC"),<br><br>1,495.72 in Litentry ("LIT"),<br><br>48,969 in Fantom ("FTM"),<br><br>47.17 in Ethereum ("ETH"),<br><br>501.41 in BUSD ("BUSD"),<br><br>                    Defendants *In Rem*. | **CV-23-01988-PHX-JJT**<br><br>**PLAINTIFF UNITED STATES OF AMERICA'S OPPOSITION TO CLAIMANTS' MOTION FOR PROTECTIVE ORDER** |

## **INTRODUCTION**

Plaintiff United States of America ("Plaintiff" or the "government") seeks to forfeit virtual currency that is traceable to proceeds of online fraud or that was commingled with proceeds to launder and conceal the source of those proceeds. Suradet Totsaponvised and Kosit Sisawigon (collectively "Claimants") have filed claims asserting ownership of a portion of the virtual currency, as well as a motion to dismiss the case. On March 17, 2025,

the government propounded 20 Special Interrogatories to each Claimant in accordance with Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rule G"). The Special Interrogatories seek additional information about the Claimants' "identit[ies] and relationship[s] to the" virtual currency at issue here. Supp. Rule G(6)(a). Claimants now move for a protective order under Federal Rule of Civil Procedure 26(c) to quash the Special Interrogatories or stay their deadline to respond until after the Court resolves a pending motion to dismiss. Special interrogatories of this nature are explicitly permitted under both the plain text of Supplemental Rule G(6) and Ninth Circuit precedent. The government respectfully requests that the Court deny Claimants' Motion for Protective Order.

## FACTUAL BACKGROUND

This case concerns the *in rem* forfeiture of virtual currency, commonly referred to as cryptocurrency, (the "Defendant Property"), seized from three Binance accounts. The Defendant Property is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) as proceeds of wire fraud in violation of 18 U.S.C. § 1343, and under 18 U.S.C. § 981(a)(1)(A) as property involved in money laundering in violation of 18 U.S.C. §§ 1956 and/or 1957.

As explained in detail in the government's Verified Complaint, Doc. 1, the Federal Bureau of Investigation ("FBI") has identified a number of related "pig butchering" fraud schemes which used similar fraudulent investment platforms, scam methods, and money laundering processes. *Id*. ¶ 21. "Pig butchering" uses apparently accidental text messages, or messages sent on other messaging platforms, to contact victims, who are then drawn into elaborate investment schemes. *Id* ¶ 18. Once the victim deposits money, often in the form of virtual currency, into a superficially functional investment platform, the victim is led to believe their investment is yielding large returns. *Id*. ¶ 19. Various means are used to encourage victims to transfer more money, including fictitious tax-related requirements to withdraw their supposed profits. *Id*. ¶ 20. The victims are ultimately not able to withdraw their money, and they lose whatever they have deposited. *Id.*

FBI agents traced virtual currency fraudulently obtained from "pig butchering" victims through multiple transfers, often made over a short time period, to three Binance accounts. *Id*. ¶¶ 36-39, 42-43, 45, 49-50. The government obtained a seizure warrant for the

2

virtual currency contained in the three accounts. *Id*. ¶ 4. On September 20, 2023, the government filed its Verified Complaint for Forfeiture *In Rem*. Doc. 1. The Court issued a Warrant for Arrest *In Rem* on November 21, 2023. Doc. 3.

On February 10, 2025, after several agreed-upon extensions of the claim deadline, Claimants filed judicial claims. Docs. 23 and 24. Claimants filed amended claims on February 25, 2025. Doc. 25 and 26. On March 5, 2025, Claimants filed a joint motion to dismiss. Doc. 27. In accordance with Supplemental Rule G(6), the government propounded Special Interrogatories on March 17, 2025, and filed notice thereof on the docket. Docs. 32 and 33. Pursuant to the stipulated briefing order entered by the Court on April 3, 2025, Doc. 25, Claimants filed their Motion for Protective Order (the "Motion") on May 5, 2025. Doc. 36.

## **LEGAL STANDARD**

Supplemental Rule G governs federal civil forfeiture actions. *See* Supplemental Rule G(1). Supplemental Rule G(6)(a) provides that "[t]he government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed." Propounding special interrogatories defers the government's time to respond to any motion to dismiss until 21 days after the claimant answers the special interrogatories. Supp. Rule G(6)(c).

The purpose of the asymmetrical discovery provided by special interrogatories, which is both broader and earlier than in other civil cases, is to allow the government to test a claimant's standing. *United States v. $1,106,775.00 in U.S. Currency*, 131 F.4th 710, 718 (9th Cir. 2025); *United States v. $209,815 in U.S. Currency*, No. C 14-0780 SC, 2015 WL 1927431, at *1 (N.D. Cal. Apr. 28, 2015) ("Special interrogatories are intended to aid the Government in ferreting out unmeritorious or fraudulent claims."). To challenge a forfeiture action on the merits, a claimant must establish both Article III and statutory standing. *United States v. One 1985 Cadillac Seville*, 866 F.2d 1142, 1148 (9th Cir. 1989). Article III standing requires that a claimant establish that they have "a sufficient interest in the property to create a case or controversy." *United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, CA*, 545 F.3d 1134, 1140 (9th Cir. 2008). It is the claimant's burden to establish

standing. *See United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 644 (9th Cir. 2012).

Standing may be challenged at any stage of the case, including the pleading stage, at summary judgment, at trial, and even after trial. *$1,106,775.00 in U.S. Currency*, 131 F.4th at 719 (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006)). At the outset of a civil forfeiture case, it may be sufficient for a claimant to make a "bare assertion" of ownership. *Real Prop. Located at 475 Martin Lane*, 545 F.3d at 1140.[1] As litigation proceeds to the summary judgment stage, however, a bare assertion is no longer enough and the claimant must present evidence of a lawful ownership. *$133,420.00 in U.S. Currency*, 672 F.3d at 639.

Supplemental Rule (G)(6) allows for a far-reaching inquiry. *See $133,420.00 in U.S. Currency*, 672 F.3d at 642-43. Questions propounded under this Rule "are not limited to 'questions regarding the identity of the claimant and the type of legal interest asserted . . . Rule G(6) interrogatories properly may 'test the veracity of [a] claim of ownership' and otherwise subject the issue of standing 'to adversarial testing.'" *United States v. $34,900.00 in U.S. Currency*, Case No. CV 20-827-CBM(Ex), 2020 WL 9893040, at *1 (C.D. Cal. Oct. 21, 2020) (quoting *$133,420.00 in U.S. Currency*, 672 F.3d at 642-43).

## **ANALYSIS**

### a. Courts Routinely Approve Special Interrogatories Like Those at Issue Here.

The government's Special Interrogatories seek information that falls into the following categories:

1. The Claimants' identities (Special Interrogatories 1-2);
2. The nature of each Claimant's interest in the Defendant Property, including how and when it was acquired (Special Interrogatories 3-6, 9-10);
3. Whether either Claimant is acting on behalf of another person (Special Interrogatories 7-8);
4. The source and funds from with the Claimants claim the Defendant Property was derived (Special Interrogatories 11-14);

---

[1] While this appears to be the rule in the Ninth Circuit, it is not universally admitted that a bare assertion of ownership is sufficient to establish standing even at the pleading stage. *See United States v. $104,250.00 in U.S. Currency*, 947 F. Supp. 2d 560, 564-65 (D. Md. 2013) (collecting cases).

5.  Why and how the Claimants obtained the Defendant Property (Special Interrogatories 16-18); and

6.  The Claimants' criminal histories (Special Interrogatories 19-20).

Similar special interrogatories inquiring into the facts undergirding a claim have been upheld many times by courts within the Ninth Circuit. *See, e.g., United States v. $295,726.42 in Account Funds Seized*, 279 F. Supp. 3d 1050, 1054-55 (C.D. Cal. 2018) (upholding interrogatories seeking "the identification of sources from which [the claimant] claims the assets were derived and of all persons having knowledge of the interest, and the identification of any facts establishing [the claimant's] ownership or any other person's interest in the assets"); *United States v. $26,742.25 in U.S Currency*, Case No. CV 17-003640-CJC(SSx), 2017 WL 6389091, at *2 (C.D. Cal. Dec. 13, 2017) (upholding interrogatories seeking, among other things, the claimant's criminal history, details regarding the acquisition of the subject property, including the reasons the property was obtained and the documents and witnesses evidencing the acquisition); *United States v. $165,822.00 in U.S. Currency*, Case No. 8:15-cv-01839-JLS-KES, 2017 WL 10574234, at *2 (C.D. Cal. Aug. 14, 2017) (upholding interrogatories seeking "a detailed description of the circumstances of each transaction by which [the claimant] acquired or obtained any interest in the defendant currency," including the identification of witnesses and documents surrounding the transactions and documents relating to the transactions); *United States v. $22,847.99 in Account Funds*, Case No.: SACV 16-0331-CJC(JEMx), 2016 WL 4803192, at *2 (C.D. Cal. Sept. 13, 2016) (upholding interrogatories concerning, among other things, the facts establishing the claimant's ownership or any other person's interest in the assets, legal or bankruptcy proceedings in which the claimant took part, communications regarding the assets, and whether the assets were the proceeds of a loan); *United States v. $333,806.93 in Proceeds from the Foreclosure of Real Property, etc.*, NO. CV 05-2556 DOC (ANx), 2010 WL 3733932, at *3 (C.D. Cal. Aug. 30, 2010) (upholding interrogatories seeking, among other things, a description of the "full circumstances" under which the claimant's interest in the defendant assets arose).

The government's Special Interrogatories are functionally identical to special interrogatories approved by other courts within this Circuit. The government is not engaging

in any type of unusual or surprising practice here, but rather exactly the sort of early discovery contemplated by Supplemental Rule G. The Court should deny the Motion, which asks it to deviate from well-established practice in this Circuit.

**b.  The Government May Use Special Interrogatories to Inquire into Standing Issues That Could Arise at Any Stage of the Case.**

Claimants argue that the Verified Complaint and their respective claims are sufficient to establish standing, and that their standing in this case is not reasonably open to debate. Mot. at 11. Claimants Sisawigon's amended claim contains a bare assertion that he is the owner of Binance Account 1, and an unspecified interest in the contents of the account that may be possessory, or an ownership interest "to the extent that such interest exists," and states that Claimant Sisawigon held the assets in Binance Account 1 as bailee or agent of Claimant Totsaponvised. Doc. 25 at 1-2. Claimant Totsaponvised states that he opened and owns Binance Account 2, employed Claimant Sisawigon to purchase and transfer virtual currency to Binance Account 2, and owns all funds that were stored in both Binance Accounts 1 and 2. Doc. 26 at 2-3.

An unequivocal claim of ownership may be sufficient to show standing at the pleading stage. *$133,420.00 in U.S. Currency*, 672 F.3d at 638. At the summary judgment stage, however, a "claimant's bare assertion of an ownership . . . interest" in the defendant property in a civil forfeiture action must be accompanied by some affirmative evidence of ownership in order to survive a motion for summary judgment. *Id.* To avoid summary judgment, a claimant must provide sufficient evidence such that a reasonable jury could find that the claimant had standing on the evidence presented. *Id.* "The mere existence of a scintilla of evidence in support of the [claimant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [claimant]." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)). The "naked possession" of property without some further explanation as to how the claimant came to possess the property is insufficient to establish standing at any stage of a forfeiture action. *Id.* at 639-40.

The Ninth Circuit has recently emphasized that the facts into which special interrogatories may delve are not limited to those sufficient to establish standing at the pleading stage. *$1,106,775.00 in U.S. Currency*, 131 F.4th at 720. Special interrogatories are

appropriate if they seek evidence that may be relevant to a standing question which could arise at any point in the case. *Id.* at 719. Accordingly, the relevant consideration is whether the discovery sought may help the government to test standing in a motion to dismiss, a motion for summary judgment, at trial, or even after the entry of judgment. *Id.* at 719, 721 n.2.

Even if Claimants' unequivocal assertions of ownership met the burdens to show standing at the pleading stage, those statements are not sufficient to resolve the question of standing for good and ever. A claimant's mere assertion of ownership does not resolve standing where no information is provided as to the source of the funds, or how the property was purchased. *See United States v. JP Morgan Chase Bank Acct. No. Ending 8215 in Name of Ladislao V. Samaniego, VL: $446,377.36*, 835 F.3d 1159, 1165 (9th Cir. 2016) (unclearly stated ownership interests and contradictory evidence create a triable issues of fact). In fact, the type of general and non-specific information that Claimants provided in their claims is exactly of the type that the Ninth Circuit held to be potentially insufficient responses to special interrogatories. *See $1,106,775.00 in U.S. Currency,* 131 F.4th at 722 (a special interrogatory response that is limited to a naked assertion that the claimant had a job would be insufficiently detailed). Where there exists some reason to believe that standing is "reasonably in dispute" the government is entitled to take Supplemental Rule G(6) discovery.

Here, the facts alleged in the Verified Complaint cast into doubt Claimants' explanations of ownership. For example, the user of Binance Account 1 transferred significant amounts of virtual currency to another account, Binance Account A, which then transferred virtual currency to Binance Account 2, and all three accounts appeared to be under common control. Doc. 1 ¶¶ 54-56. Binance Account 1 was used as a pass-through account, and Claimants have offered no explanation as to why this additional stage of obfuscation was necessary in the first place. Doc. 1 ¶¶ 57-65. The crux of the government's case is that the Defendant Property consists of the proceeds of wire fraud and other property commingled with those proceeds in order to conceal the origin of the proceeds. How and why the Defendant Property came to be stored in the seized accounts, the source of funds exchanged for the Defendant Property, and whether any third parties have an interest in the Defendant Property are germane to the question of Claimants' standing. Given the unusual

7

usage of the Binance Accounts, and the complete lack of any explanation as to what, if any, value was given for the virtual currency transferred into Binance Account 1 and on to Binance Account 2, there are ample grounds on which to conclude that standing is "reasonably in dispute."

Claimants argue that the situation here is similar to that in *United States v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968 (9th Cir. 2015), where the Ninth Circuit held that a claimant's failure to respond to special interrogatories did not require striking the claim. Doc. 36. at 14. However, in that case, the determinative issues were whether the claimant's "failure to comply with Rule G(6) vitiated his statutory standing . . . and required dismissal" and whether the district court had improperly struck the claim without giving the claimant an "opportunity to cure his lack of response." *17 Coon Creek Road*, 787 F.3d at 979. As the Ninth Circuit framed the matter, the district court had improperly elevated a discovery requirement into a standing defect. *Id.* at 976; *see also $1,106,775.00 in U.S. Currency*, 131 F.4th at 726 (Proportionality "appears to have been our reason for striking the interrogatories in *17 Coon Creek*."). Claimants' cherry-picked and out-of-context quotations aside, the decision in *17 Coon Creek Road* was driven by considerations other than the claimant's bare assertion of ownership.

Claimants also invoke *United States v. $215,587.22 in U.S. Currency*, 282 F. Supp. 3d 109 (D.D.C. 2017). Doc. 36 at 14. In addition to being an out-of-Circuit district court case, the conclusion in *$215,587.22 in U.S. Currency* was that discovery on certain topics was in fact warranted. 282 F. Supp. 3d at 113-14. Here, where there are facts indicating that the Binance Accounts were used to conceal the source of funds, and genuine questions as to how and why the Defendant Property was acquired, the Court should decline to enact the expansive protective order that Claimants have requested.

**c.  The Court Should Require Claimants to Respond to the Special Interrogatories Before Ordering the Government to Respond to Claimants' Motion to Dismiss.**

Claimants argue that the Court should proceed to rule on the motion to dismiss before requiring Claimants to respond to the Special Interrogatories, arguing that the motion to dismiss challenges the Court's *in rem* jurisdiction. Doc. 36 at 15-16. Notably, Claimants do not offer a single civil forfeiture case supporting their proposed schedule. In fact, Claimants'

approach is directly contradicted by the text of Supplemental Rule G(6)(c), which states that "[t]he government need not respond to a claimant's motion to dismiss the action under Rule G(8)(b) until 21 days after the claimant has answered these interrogatories." "A claimant *who establishes standing* to contest forfeiture" may move to dismiss the action under Rule 12(b). Supp. Rule G(8)(b)(i) (emphasis added). As standing is a threshold issue, courts have refused to hear any motion, including motion to dismiss, from a claimant who has not answered special interrogatories. *$1,106,775.00 in U.S. Currency*, 131 F.4th at 723 (collecting forfeiture cases holding that a motion to suppress need not be ruled on before standing is established); *United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014) (holding that a claimant must establish standing before any motion to dismiss is ruled upon). The mere fact that Claimants contest the Court's jurisdiction over the Defendant Property does not displace the clearly stated procedures of Supplemental Rule G, particularly where the Court obtained *in rem* jurisdiction over the property via the issuance and execution of a warrant for arrest *in rem*. *See United States v. One Oil Painting Entitled "Femme en Blanc" by Pablo Picasso*, 362 F. Supp. 2d 1175, 1183 (C.D. Cal. 2005) ("Property is brought under the dominion and control of the court through arrest of the property.").

**d. The Special Interrogatories Were Not Propounded for an Improper Purpose.**

Claimants argue that the Special Interrogatories are not proportional[2] and go to the merits of the case rather than standing. Doc. 36 at 17. While responses to the Special Interrogatories may be helpful to the government in aspects of this case other than testing standing, this does not render them illegitimate. *$1,106,775.00 in U.S. Currency*, 131 F.4th at 718 ("And because a claimant's relationship to property overlaps with the merits of a forfeiture claim, [special] interrogatories will likely produce information that the government can use to prove its case.") (citing *$133,420.00 in U.S. Currency*, 672 F.3d at 642). The mere fact that responses to special interrogatories may also speak to the merits of the case does not make those interrogatories suspect, or render them propounded for an improper purpose.

---

[2] To the extent that Claimants are arguing proportionality, they have not thus far proposed any measures to reduce the burden of responding, short of quashing the interrogatories entirely. While the Court has not yet issued a scheduling order, the Court's standing order governing discovery disputes requires that a written discovery motion must not be filed without leave of the Court, and such motion must adhere to a prescribed form. The Motion is emphatically a dispute about discovery, and neither requirement was met here.

## **CONCLUSION**

For the foregoing reasons, Plaintiff United States of America respectfully asks that the Court deny Claimants' Motion for Protective Order.

Respectfully submitted this 27th day of 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/Joseph F. Bozdech*
JOSEPH F. BOZDECH
Assistant United States Attorneys