**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | No. CV-23-01988-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| 5,012,294.90 in TetherUS, *et al.*, | |
| Defendants. | |

At issue are three Motions filed by Claimants Suradet Totsaponvised and Kosit Sisawigon: a Request for Judicial Notice in Support of Motion to Dismiss (Doc. 29); a Motion to Dismiss for Lack of *In Rem* Jurisdiction and Venue and Failure to State a Claim (Doc. 31), to which Plaintiff the United States filed a Response (Doc. 54) and Claimants filed a Reply (Doc. 57); and a Motion to Suppress Evidence of the Untraceable Funds in Claimants' Accounts (Doc. 43), to which the United States filed a Response (Doc. 55) and Claimants filed a Reply (Doc. 56). The Court finds these matters appropriate for resolution without oral argument. LRCiv 7.2(f).

**I.      BACKGROUND**

On September 20, 2023, the United States filed a Verified Complaint for Forfeiture *In Rem* (Doc. 1, Verified Compl.) against virtual currency, commonly referred to as cryptocurrency, in three separate accounts opened in Binance, a virtual currency exchange. The government avers that Binance Account 1 is held in the name of Claimant Sisawigon,

Binance Account 2 is held in the name of Claimant Totsaponvised, and Binance Account 3 is held in the name of non-claimant Low Li Yu. (Verified Compl. ¶¶ 5–7.)

The government claims the Defendant property "was swindled from victims through the course of an investment fraud scam" commonly referred to as "pig butchering," whereby scammers gain the trust of victims and convince them to transfer funds to a cryptocurrency address the scammers control. (Verified Compl. ¶¶ 17–20.) The investment schemes "have the appearance of a legitimate enterprise through the use of fabricated interfaces, derivative or 'spoofed' websites that appear related to legitimate companies, and other techniques designed to bolster the scheme's legitimacy." (Verified Compl. ¶ 19.) The investment platform indicates to the victim that the investment is producing substantial returns, and in some instances, the victim is able to make a small withdrawal from the investment account, further bolstering the apparent legitimacy of the investment scheme. (*E.g.*, Verified Compl. ¶ 28.) Ultimately, the victims are unable to withdraw anything from the investment accounts, thereby losing their funds. (Verified Compl. ¶ 20.) The United States Federal Bureau of Investigation (FBI) traced victims' lost funds to all three Binance accounts containing the Defendant property. (*E.g.* Verified Compl. ¶¶ 35–37, 39, 42–45, 49–50.) After the government initiated this action to seize and gain clear title to the Defendant virtual currency so that it "may be returned to the victims of the fraud" (Verified Compl. ¶ 17), the Court issued a warrant for the arrest *in rem* of the Defendant virtual currency on November 21, 2023 (Doc. 3). Pursuant to the warrant, the FBI seized and took into its possession the Defendant virtual currency on November 24, 2023. (Doc. 4.)

Sisawigon filed an Amended Verified Claim and Statement of Interest on February 26, 2025, in which he avers he is the owner of Binance Account 1 and thereby asserts an interest and claims possessory and/or ownership rights to the funds seized from Binance Account 1. (Doc. 25.) Totsaponvised also filed an Amended Verified Claim and Statement of Interest on February 26, 2025, in which he also asserts an interest and claims any and all rights to the funds seized from Binance Account 1, and in which he avers he is

the owner of Binance Account 2, thereby asserting an interest and claiming any and all rights to the funds seized from Binance Account 2. (Doc. 26.)

Now before the Court are Claimants' Motion to Dismiss for Lack of *In Rem* Jurisdiction and Venue and Failure to State a Claim (Doc. 31) and Motion to Suppress Evidence of the Untraceable Funds in Claimants' Accounts (Doc. 43). After the Court compelled Claimants to respond to special interrogatories the government served on them under Supplemental Rule ("Supp. R.") G(6) of the Federal Rules of Civil Procedure (Doc. 45), the government filed its Responses to the Motions (Docs. 54, 55) and Claimants filed their Replies (Docs. 56, 57).

## II.    SUPPLEMENTAL RULE G

In relevant part, Supplemental Rule G provides that a complaint in an *in rem* forfeiture action must "state the grounds for subject-matter, in rem jurisdiction over the defendant property, and venue," Supp. R. G(2)(b), and "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial," Supp. R. G(2)(f). "A claimant who establishes standing to contest forfeiture may move to dismiss the action under Rule 12(b)." Supp. R. G(8)(b)(i).

On a finding of probable cause, the court "must issue a warrant to arrest the property if it is not in the government's possession, custody, or control and is not subject to a judicial restraining order." Supp. R. G(3)(b)(ii). "If the defendant property was seized, a party with standing to contest the lawfulness of the seizure may move to suppress use of the property as evidence. Suppression does not affect forfeiture of the property based on independently derived evidence." Supp. R. G(8)(a).

## III.    CLAIMANTS' MOTION TO DISMISS

### A.    Legal Standard

Here, Claimants move to dismiss this forfeiture action for lack of *in rem* jurisdiction under Federal Rule of Civil Procedure 12(b)(2), improper venue under Rule 12(b)(3), and failure to state a claim under Rule 12(b)(6). (Doc. 31 at 2.) As for the last basis, Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d

729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

> **B.** **The Verified Complaint Adequately States a Claim and the Grounds for *In Rem* Jurisdiction and Venue**

In conjunction with their Motion to Dismiss, Claimants ask the Court to take judicial notice of the value of the virtual currency in Binance Accounts 1 and 2 as of March 3, 2025, as valued through the virtual currency platform Coinbase. (Doc. 29.) According to

that valuation, the virtual currency in Binance Account 1 was worth $988,286.19, and the virtual currency in Binance Account 2 was worth $114,305,807.78, for a total value in both accounts of $115,294,093.97. (Doc. 29.) Because the government does not contest Claimants' request or the Coinbase valuation, and the Court can take judicial notice of such currency conversion valuations not subject to reasonable dispute under Federal Rule of Evidence 201(b), *see Senah, Inc. v. AVIC Forstar S&T Co.*, 2019 WL 3486064, at *2 n.3 (N.D. Cal. Aug. 1, 2019), *aff'd*, 809 F. App'x 441 (9th Cir. 2020), the Court will grant Claimants' request (Doc. 29).

Claimants first argue that the Court should dismiss this action because the government's Verified Complaint fails to state facts sufficient to demonstrate that this Court has *in rem* jurisdiction or that the District of Arizona is a proper venue. Akin to surviving a motion to dismiss for lack of personal jurisdiction, the government as plaintiff bears the burden of demonstrating *in rem* jurisdiction and venue. *See Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). The government need "make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss" where the court takes "uncontroverted allegations in the complaint . . . as true" and "resolves all disputed facts in favor of the [government]." *Id.*; *see also United States v. 3 Parcels in La Plata Cnty., Colo.*, 919 F. Supp. 1449, 1452 (D. Nev. 1995). Under 28 U.S.C. § 1355, among the venues in which an *in rem* forfeiture action may be brought is "the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred." *Id.* § 1355(b)(1)(A); *see United States v. Approx. $1.67 Million (US)*, 513 F.3d 991, 998 (9th Cir. 2008); *United States v. 2007 Custom Motorcycle, VIN 1R9SM296271423003*, 2010 WL 2721899, at *3 (D. Ariz. July 7, 2010) (stating 28 U.S.C. § 1355 guides both *in rem* jurisdiction and venue in a forfeiture action *in rem*).

In the Verified Complaint, the government alleges that numerous acts leading to the forfeiture at issue took place in Arizona, including that victims of the alleged investment fraud scam were located in Arizona and the FBI traced the victims' investments to the Defendant virtual currency in the Binance accounts. (Verified Compl. ¶ 18.) This is a

- 5 -

statement of the grounds for *in rem* jurisdiction and venue consistent with the requirement set forth in Supplemental Rule G(2)(b).

Claimants argue that the only Arizona victim of the investment fraud scam the government identifies with specificity in the Verified Complaint is K.C. and that the allegations in the Verified Complaint fail to adequately tie K.C. to the virtual currency in the Binance accounts. (Doc. 31 at 12–13; Doc. 57 at 2–4.) The Court disagrees. The government alleges that, "[b]eginning in March of 2022, the [FBI] identified numerous victims of a pig butchering scheme based on *fraudulent investment platforms including NTU Capital Limited*." (Verified Compl. ¶ 21 (emphasis added).) K.C., an Arizona resident, registered on the fraudulent NTU Capital website (ntucapital.com), and after K.C. invested approximately $1 million in cryptocurrency, "the fraudulent NTU platform falsely indicated that his investment was producing substantial returns" when in fact K.C. had been scammed out of his entire investment. (Verified Compl. ¶¶ 26, 28, 29.) Through another victim, W.C., the FBI traced investments stolen through the fraudulent NTU Capital platform to the three Binance accounts. (Verified Compl. ¶¶ 36–39.) These alleged facts— critically the link the FBI established between investments through the fraudulent NTU Capital platform and the funds in the three Binance accounts—are not too tenuous, as Claimants argue; rather, they are sufficient to demonstrate that K.C.'s acts in Arizona of investing his money by relying on misrepresentations on the fraudulent NTU Capital platform give rise to the forfeiture of the three Binance accounts the government seeks in this action, such that this Court has *in rem* jurisdiction and the District of Arizona is a proper venue under 28 U.S.C. § 1355(b)(1)(A). In short, the government has adequately alleged in the Verified Complaint that K.C.'s investment in Arizona ended up in one of the Binance accounts by way of the fraudulent NTU Capital platform, and the government has thus made a *prima facie* showing of jurisdictional facts to demonstrate that *in rem* jurisdiction and venue are proper in Arizona under § 1355(b)(1)(A). *See Approx. $1.67 Million (US)*, 513 F.3d at 998 (emphasizing that "'any act' giving rise to the forfeiture occurring within the district" satisfies the statutory jurisdictional requirement).

Claimants next contend that the government fails to state an *in rem* forfeiture claim under the Rule 12(b)(6) standard because its allegations in the Verified Complaint only explicitly trace a small portion of the virtual currency in Binance Accounts 1 and 2 to specified unlawful activity (SUA). (Doc. 31 at 15.) As stated *supra*, Supplemental Rule G(2)(f) provides the pleading standard for an *in rem* forfeiture complaint, and the Ninth Circuit has observed that, while it "is a higher standard than 'notice pleading," it remains a "low bar"—that is, it is not an "onerous standard"—and a complaint must simply "state the circumstances giving rise to the forfeiture claim with sufficient particularity that the claimant can commence a meaningful investigation of the facts and draft a responsive pleading"; in other words, the complaint must "permit a reasonable belief for pleading purposes that the property in question is subject to forfeiture." *United States v. Aguilar*, 782 F.3d 1101, 1108–09 (9th Cir. 2015) (cleaned up and internal quotations omitted) (citing Advisory Committee Note to Supplemental Rule G(2) and *United States v. Mondragon*, 313 F.3d 862 (4th Cir. 2002)). "[T]he government need not show that all of the claimed property is tainted to satisfy Supplemental Rule G(2)(f)," and district courts are instructed to "wait until trial to adjudicate arguments that a portion of the property that the government claims is not subject to forfeiture." *Aguilar*, 782 F.3d at 1109 (citing *United States v. One Parcel of Real Prop.*, 921 F.2d 370, 375 (1st Cir. 1990) ("Whether none, all, or only a portion of the defendant property is forfeitable is not determined at the pleadings stage, but at trial.")).

First, in its claim under 18 U.S.C. § 981(a)(1)(C), the government seeks forfeiture of property constituting or derived from proceeds traceable to an SUA as defined in 18 U.S.C. § 1956(c)(7), and the SUA alleged here is wire fraud and/or conspiracy to commit wire fraud under 18 U.S.C. § 1343. (Verified Compl. ¶ 75.) Wire fraud under § 1343 is (1) a scheme or artifice to obtain money or property by fraudulent representations; (2) by use of wires in interstate or foreign commerce; (3) with a specific intent to defraud. *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013).

. . .

- 7 -

In support of this claim, the government alleges the FBI uncovered a sophisticated "pig butchering" operation that entailed a complex series of transfers whereby proceeds landed in the three Binance Accounts. (Verified Compl. ¶¶ 50–73.) The victims were the targets of multiple fraudulent representations by wire, including with regard to the legitimacy of NTU Capital as a virtual currency investment platform, upon which the victims relied to invest large sums of money by wire. (Verified Compl. ¶¶ 21–25.) The victims received fraudulent information by wire that their investments were making large gains, encouraging them to invest more. (Verified Compl. ¶¶ 28, 31, 44, 48.) The victims were ultimately unable to access any funds from their investments, raising the reasonable inference that the scammers intended to defraud them. (Verified Compl. ¶¶ 29, 34–35, 44, 48.) The government has thus sufficiently alleged facts supporting the SUA of wire fraud under § 1343. Moreover, the FBI traced the "sophisticated and convoluted" movement of funds from the victims identified in the Verified Complaint to the three Binance Accounts and noted that "the same individual(s) or entity(ies) appear to control the three Binance Accounts." (Verified Compl. ¶ 50; *see also* ¶¶ 36, 39, 43, 45, 49.) The government has thus adequately alleged the link, or substantial nexus, between the SUA and the property contained in the three Binance Accounts, such that it is reasonable to believe that the property is subject to forfeiture.

Claimants' principal objection to the government's claim is that the funds from the victims specifically identified in the Verified Complaint constitute only a small portion of the virtual currency seized in the three Binance Accounts, valued at approximately $115 million a year ago. But as the case law provides and the Court noted *supra*, the government's Verified Complaint need not trace every dollar's worth of virtual currency in the Binance Accounts to the wire fraud scheme; the final portion of proceeds from the SUA contained in the Binance Accounts is better determined at summary judgment or trial, not the pleading stage. *Aguilar*, 782 F.3d at 1109. In sum, the allegations in the Verified Complaint raise the reasonable belief for pleading purposes that the Binance Accounts are subject to forfeiture, and the government's claim is sufficient to allow Claimants to conduct

a meaningful investigation of the facts alleged. *See id.* at 1108–09. That is all that is required at the pleading stage.

In its second claim, brought under 18 U.S.C. § 981(a)(1)(A), the government seeks forfeiture of property involved in a transaction in violation of 18 U.S.C. §§ 1956 and/or 1957. (Verified Compl. ¶ 77.) Specifically, the government asserts a concealment money laundering theory under 18 U.S.C. § 1956(a)(1)(B). (Doc. 54 at 12–15; *see also* Verified Compl. ¶¶ 51–73.) The elements of such an offense are as follows: (1) a financial transaction, (2) involving the proceeds of unlawful activity, with (3) knowledge that the proceeds were from unlawful activity, and (4) knowledge "that the transaction was designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." *United States v. Singh*, 995 F.3d 1069, 1075 (9th Cir. 2021) (internal quotation omitted).

Claimants challenge the adequacy of the Verified Complaint's factual allegations with respect to elements 3 and 4 of the government's concealment money laundering theory. To begin with, the government's allegations that a portion of the virtual currency in the Binance Accounts can be traced back to a fraudulent investment scheme, as discussed *supra*, go part of the way to show knowledge that the proceeds involved in the financial transactions were from unlawful activity and that the transactions were designed to disguise those proceeds. In addition, the Verified Complaint contains detailed allegations regarding the complexity of the transactions (Verified Compl. ¶¶ 51–73), including rapid transfers from virtual currency wallet to wallet in a short time period, each of which transfer incurs a transaction fee and therefore does not ordinarily make economic sense (Verified Compl. ¶ 64); and transactions involving splitting and recombining virtual currency and "chain hopping," which "occurs when the holder of the cryptocurrency converts it from one [form] of cryptocurrency to another—for instance, converting Bitcoin to Ethereum," and "can make it harder to trace because it will often result in the currency being moved onto a separate blockchain ledger" (Verified Compl. ¶¶ 66–72). From the allegations as a whole, it is reasonable to believe that the transactions were being conducted to disguise proceeds

because they came from unlawful activity, as required in concealment money laundering. *See United States v. Tekle*, 329 F.3d 1108, 1113–14 (9th Cir. 2003) (finding evidence of the transactional structure supported concealment money laundering conviction and stating that, although the transactions in question may have been "open, notorious, and did not disguise defendant's identity," the concealment necessary under the statute "is that of the source of the funds, not the identity of the money-launderer").

In their Reply, Claimants argue the government's allegations are insufficient because they do not adequately connect the upstream transactions the government identifies to criminal activity. (Doc. 57 at 8–10.) But, as the Court stated *supra* in examining whether the government stated a claim for forfeiture based on the proceeds of wire fraud, the Verified Complaint contains sufficient allegations at this stage of the litigation that the Binance Accounts contain the virtual currency proceeds of a pig butchering fraud scheme. Considering the proceeds from unlawful activity have been traced to Binance Accounts 1 and 2 and the forensic analysis of those accounts by the FBI shows that transfers into and out of those accounts were made rapidly, in short periods of time, using splitting, recombining, and chain hopping—and indeed that Binance Account 1 is most likely simply a pass-through account to Binance Account 2 (Verified Compl. ¶ 57)—the Court can readily believe the government's concealment money laundering theory at this stage of the litigation.[1]

In short, under Rule 12(b)(6) and Supplemental Rule G, the government has stated claims for forfeiture under 18 U.S.C. § 981(a)(1) based on both its theories of wire fraud and concealment money laundering. That the government has not connected all the funds in the Binance Accounts to unlawful activity is not reason for the Court to dismiss the forfeiture claims at this stage of the litigation. *See Aguilar*, 782 F.3d at 1109; *United States v. One 2005 Lagoon 440 Sailing Catamaran Named Bohemian Rhapsody*, 2017 WL

---

[1] The cases the parties cited in their arguments here, while informative, were either not in the same posture as this case—the motion to dismiss stage—or not sufficiently factually akin to the allegations in the Verified Complaint, so the Court does not specifically address them here.

10573807, at *2 (C.D. Cal. Aug. 23, 2017) (stating that "forfeitable property . . . need only be 'involved' in a monetary transaction with criminal proceeds" but "need not be limited to property specifically traceable to illegal proceeds"). For all these reasons, the Court will deny Claimants' Motion to Dismiss for Lack of *In Rem* Jurisdiction and Venue and Failure to State a Claim (Doc. 31).[2]

## IV.    CLAIMANTS' MOTION TO SUPPRESS

Finally, pursuant to Supplemental Rule G(8)(a), Claimants move to suppress evidence of what they term the "untraceable" virtual currency in the Binance Accounts because the warrant to arrest and seize the so-called "untraceable" portion of those accounts was not supported by probable cause. (Doc. 43.) In 18 U.S.C. § 981(b)(2) and (3), Congress authorized seizure pursuant to a warrant in a case such as the present one if there is probable cause to believe the property is subject to forfeiture. "The standard of probable cause to support forfeiture is similar to that required to obtain a search warrant." *United States v. Real Property 874 Gartel Drive, Walnut, Cal.*, 79 F.3d 918, 922 (9th Cir. 1996) (citing *United States v. One 56-Foot Motor Yacht Named Tahuna*, 702 F.2d 1276, 1281 (9th Cir. 1983)). "The government need prove only that it had reasonable grounds to believe that the property was involved in the alleged offenses, 'supported by less that *prima facie* proof but more than mere suspicion,' and that belief may be supported by hearsay evidence." *Id.* (quoting *Yacht Named Tahuna*, 702 F.2d at 1283). A magistrate judge's "determination of probable cause should be paid great deference by reviewing courts," and a court must not "invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *United States v. King*, 985 F.3d 702, 707 (9th Cir. 2021) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983), and *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).

. . .

---

[2] The Court agrees with the government that Claimants' argument that forfeiture in this case constitutes an excessive fine under the Eighth Amendment (Doc. 31 at 23–24) is premature. Supplemental Rule G(8)(e) provides that a "claimant may seek to mitigate a forfeiture under the Excessive Fines Clause of the Eighth Amendment by motion for summary judgment or by motion made after entry of a forfeiture judgment."

In the Verified Complaint and the Affidavit of FBI Special Agent John Pollard supporting the government's application for a seizure warrant (Case No. MB-22-08388-PHX-JZB, Doc. 1-1 at 3–55, Pollard Aff.), the government only explicitly traces a portion of the virtual currency in the Binance Accounts to unlawful activity. But the Court cannot conclude from those allegations at this point in the litigation that any funds in the Binance Accounts are "untraceable" to unlawful activity, as characterized by Claimants. The government never so alleges, and the only conclusion that can be drawn from the allegations before the Court is that the government has explicitly and directly traced certain virtual currency in the Binance Accounts to the proceeds of pig butchering fraud schemes. The remaining virtual currency in the Binance Accounts is therefore not "untraceable"; it is at most not explicitly traced in the Affidavit or Verified Complaint.

In support of the magistrate judge's finding of probable cause to seize Binance Accounts 1, 2, and 3 in their entirety, the government begins with the portions of the Affidavit—which portions were mirrored by allegations in the Verified Complaint and discussed *supra*—alleging details of the pig butchering schemes and the proceeds therefrom, the use of the NTU website to "ensnare multiple victims," and the FBI's tracing of the proceeds from the fraudulent schemes to the Binance Accounts. (Doc. 55 at 7 (citing Pollard Aff. ¶¶ 21–77).) Particularly related to the government's forfeiture claim based on concealment money laundering, the Pollard Affidavit also details that transfers into and out of those accounts were made rapidly, in short periods of time, using splitting, recombining, and chain hopping; that Binance Account 1 is most likely simply a pass-through account or shield for Binance Account 2; and that the accounts were under common control. (Doc. 55 at 7 (citing Pollard Aff. ¶¶ 79–103).) These allegations are more than what Claimants refer to as "smoke and mirrors" (Doc. 56 at 10) and beyond the facts alleged in the cases cited by Claimants; the allegations in the Pollard Affidavit raise the reasonable belief that the Binance Accounts were being used in concealment money laundering and, critically, the reasonable belief that any ultimately untraced virtual currency in the accounts was being used to conceal the proceeds of unlawful activity that ultimately were traceable. *See*

18 U.S.C. § 981(a)(1)(A) (providing property is subject to forfeiture if it is "*involved in* a transaction or attempted transaction in violation of section 1956 [or] 1957"); *United States v. Bikundi*, 926 F.3d 761, 793 (D.C. Cir. 2019) (finding the government's evidence sufficient that unlaundered funds were used to facilitate concealment money laundering scheme).

The allegations in the Pollard Affidavit thus constitute more than "vague references to commingling," as characterized by Claimants. (Doc. 43 at 3.) Because the Court draws from the allegations the reasonable belief that any ultimately untraced funds in the Binance Accounts were being used to conceal the proceeds of the pig butchering scheme forming the foundation of the government's forfeiture claims in this lawsuit, the Court cannot conclude that the magistrate judge did not have a substantial basis to find that probable cause existed to issue a warrant for the arrest *in rem* of the entirety of the Binance Accounts. As a result, the Court will deny the Motion to Suppress Evidence of the Untraceable Funds in Claimants' Accounts (Doc. 43).

**IT IS THEREFORE ORDERED** granting the Request for Judicial Notice in Support of Motion to Dismiss (Doc. 29).

**IT IS FURTHER ORDERED** denying the Motion to Dismiss for Lack of *In Rem* Jurisdiction and Venue and Failure to State a Claim (Doc. 31).

**IT IS FURTHER ORDERED** denying the Motion to Suppress Evidence of the Untraceable Funds in Claimants' Accounts (Doc. 43).

**IT IS FURTHER ORDERED** that, by **March 27, 2026**, the government and Claimants shall jointly file a proposed case management schedule for this matter going forward.

Dated this 11th day of March, 2026.

_____
Honorable John J. Tuchi
United States District Judge